In the Matter of the Claim of FRED DUTCHER, Respondent, against VICTORIA PAPER MILLS COMPANY and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.

Third Department, March 2, 1927.

**Workmen's compensation — relationship — claimant made contract to excavate tail race under employer's mill — employer agreed in writing to furnish all money for labor and materials — said writing did not specify plans or state compensation — claimant was to do work for ten per cent of cost — president of employer directed how work was to be done to some extent — claimant was independent contractor.**

The relationship of the claimant to the employer was that of independent contractor. The evidence shows that the claimant and the employer signed a written memorandum confirming prior conversations in which the employer agreed to furnish all money for labor and materials for work to be done by the claimant in excavating a tail race under the employer's mill.    The writing did not specify the plan of the work nor did it state the amount of compensation, but the claimant testified that he was to do the work for a consideration equal to ten per cent of the cost.    The employer did not have the right to discharge the claimant and the claimant was paid for his work on the basis of ten per cent of the cost.    The fact that the president of the employer did, to some extent, personally supervise the work, and especially in relation to what should be done and, on some occasions directed the method of the work, did not change the relationship of the parties, for any interference on the part of the president was acquiesced in by the claimant.

DAVIS, J., dissents, with opinion.

APPEAL by the Victoria Paper Mills Company and another from an award of the State Industrial Board, made on the 24th day of May, 1926.

*Hart, Senior & Nichols* [*Raymond F. Nichols* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

McCANN, J. The employer was a manufacturer of paper. Claimant Dutcher was engaged to take out and excavate rock in the tail race under the employer's mill. During such excavation a rock was loosened and struck the claimant across the right foot, fracturing the same. An award was made after the claim had been originally dismissed by the referee on the ground that the claimant was an independent contractor. Two questions are raised on this appeal: (1) That claimant was an independent contractor; and (2) that if claimant is found to be an employee, he is not entitled to any compensation because there is no proof that his earning capacity was decreased because of the alleged injury. Some time prior to July 17, 1923, claimant had a conversation with Mr. Redhead, the president of the Victoria Paper Mills Company, employer, with reference to excavation in the tail race under the said mill. In confirmation of this conversation, claimant wrote the following letter:

" *July* 17, 1923.

" VICTORIA PAPER MILLS,

      " Fulton, N. Y.

            " Attention: E. R. Redhead.

   " GENTLEMEN.— Confirming our conversation and agreement, I hereby agree to do certain rock excavation in your tailrace, and any other work pertaining to same. Whereby you are to furnish all the necessary moneys expended for labor, materials, rentals or any other expense pertaining to said job.

   " Said work to be started not later than August 5, 1923, and rushed to completion as quickly as possible.

                  " (Signed)     VICTORIA PAPER MILLS CO.,

                        " By E. R. REDHEAD, *Pres.*

          . " (Signed)     F. D. DUTCHER."

Claimant testified that he was to receive for his services ten per cent of the total cost of the job to be figured on men's wages, cost of material, rental of machinery, equipment and any other expenses pertaining to the work, including the cost of rental of such of claimant's machinery as might be used. He received as his percentage on the entire cost the sum of $528.12. The work was started on August 3, 1923, and occupied seventeen or eighteen days. Claimant was equipped to do this kind of work, having been engaged for many years in the contracting business. There were no plans or specifications adopted for the work. Mr. Redhead told claimant what he wanted done and at times advised with him as to what he thought should be done. Claimant testified that with a very few exceptions the men engaged in the work were hired by him but that some of the men were regular employees of

the Victoria Paper Mills Company. All of the men were carried on the payroll of the paper company, and their time on the work in question was kept by the timekeeper of the employer.

It is urged that inasmuch as some of the men were furnished by the employer, claimant was not an independent contractor. It is clear that the plan adopted for keeping account of the men and their time was simply one of convenience as it required but one set of books and the same timekeeper. By this method claimant could have men at his command who were not busy working in the mill. It was a ready way of securing help by claimant when he needed additional men. It also insured protection to the employer against the filing of workmen's liens, because payment for all labor done was cared for by the employer as the work progressed. It is also urged that claimant was not an independent contractor because the employer assumed and maintained supervision of the men and of the work. The testimony shows that on one occasion Redhead discharged one of the men who had been hired by the claimant and on another occasion he insisted that a team be laid off. The next morning Redhead reinstated the team on the job. On another occasion it appears that Redhead objected when the men were going to make a blast near a building. He was afraid it would not be safe; he at times gave instructions with reference to excavation and at times directed that a little more or a little less quantity of dirt be excavated. He also directed the men with reference to the places where they were to excavate. These are a few concrete instances of instructions being given by Redhead. One witness testified that whenever there was any dispute between claimant and Redhead he followed claimant's instructions. Another witness testified that he was hired to work on the job by claimant and that the latter told him " if Mr. Redhead comes along and tells you to do anything, go ahead and do it."

The difference between an independent contractor and an employee is stated in *Matter of Beach* v. *Velzy* (238 N. Y. 100, 103) as follows: " The independent contractor is one who agrees to do a specific piece of work for another for a lump sum or its equivalent who has control of himself and his helpers, as to when, within a reasonable time, he shall begin and finish the work; as to the method, means or procedure of accomplishing it; and who is not subject to discharge because he does the work as to method and detail in one way rather than another. In the relation of employer and employee the employer has control and direction not only of the work as to its result but as to the details and method of doing the work and may discharge the employee for disobeying such control and direction. Measured by these tests the evidence does not justify

the finding of the Commission that claimant was engaged as an employee of appellant within the meaning of the Workmen's Compensation Law."

Applying the above rule to the present case we find that the two cases are analogous in many respects; in each case there was a specific piece of work to be done for a lump sum or its equivalent (the equivalent in this case being ten per cent of the cost price of the work); the contractor had control of himself and of his helpers as to when and within what time he could begin and finish the work and as to the method and means of accomplishing it. The testimony above referred to as interference by Redhead in giving orders with reference to the work, shows that there was no conflict between the employer and the claimant. Claimant tolerated the interference, but that did not change the status of the employer and the claimant. (*Matter of Beach* v. *Velzy, supra.*) There was no reason for claimant to have objected to the suggestions or directions given by Redhead because they did not affect the pay claimant was to receive for his work; furthermore, there were no specifications provided so that at all times there was an open question as to exactly what was to be done. This was a matter to be determined by the employer. The method of doing the work was a matter to be determined by the contractor. In any event this question of conflicting instructions is solved by the opinion in the *Beach Case* (*supra*, 104), as follows: " I do not convert an independent contractor into an employee if I help him move his ladders or if I allow a small boy to amuse himself by giving volunteer assistance, or if the contractor tolerates my interference and advice as to how and when the work shall be done."

The claimant was not subject to discharge because he did the work as to method and detail in one way rather than in another. There is nothing in the conduct of the employer or of the claimant to show that the latter released his rights as an independent contractor further than to please the employer as to the manner of execution of the work and then only in instances where no specifications had been provided. In any event all that the proof shows are isolated instances of assumption of authority on the part of Redhead but not enough to show any surrender by the claimant of his authority as contractor.

To summarize: Claimant's relation to his employer is that for a fixed sum he agreed to do a specific job. In so doing he was to furnish all labor either by using men already in his employment, to take men from the employer's mill or to hire others. He was also to furnish materials and the employer was to pay therefor and in addition the employer was to pay for all rentals and expenses

incurred.   It was not labor and material furnished in the production of the plant but was a separate piece of work done in repairing the plant.   The whole job was given to the claimant, not a portion thereof.

Having concluded that claimant was an independent contractor, it is unnecessary to discuss the question of claimant's decreased earning capacity.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

VAN KIRK, Acting P. J., HINMAN and WHITMYER, JJ., concur; DAVIS, J., dissents with an opinion.

VAN KIRK, Acting P. J.   Claimant was an independent contractor.   In the document dated July 17, 1923, and signed " Victoria Paper Mills Co., By E. R. Redhead, Pres." and " F. D. Dutcher " is this: " Confirming our conversation and agreement, I hereby agree to do certain rock excavation in your tailrace, and any other work pertaining to same.   Whereby you are to furnish all the necessary moneys expended for labor, materials, rentals or any other expense pertaining to said job.   Said work to be started not later than August 5, 1923, and rushed to completion as quickly as possible."   Mr. Aiken in his brief seems to take the position that, when the work was begun, it was understood and intended that claimant was an independent contractor, but that Mr. Redhead, the president of the paper mills company, had taken over the control and management of the work and gave orders concerning its performance, discharged men and in fact took the control of the work out of the hands of the claimant.   It seems to me the parties must abide by the contract made.   That contract was never changed.   If Mr. Redhead interfered with the work it could not change their agreement.

We are considering the relation of Dutcher to the paper mills company.   He undertook what he calls the " job; " he says he agrees " to do certain rock excavation in your tailrace, and any other work pertaining to same."   The time to begin is fixed and completion is to be accomplished as soon as possible.   He took the job on a cost plus basis.   He was to do no physical work.   He was to furnish the men to do this and he testified that he hired the men.   He furnished all the necessary machinery and equipment for the job; a rental price was fixed on these as a part of the cost of the work.   He took a certain contract; he never was employed within the meaning of that word.   The job was his to perform; he was to have control.   If Redhead usurped Dutcher's position

35

and activities, he simply did what Dutcher contracted to do and for which alone Dutcher was paid. Dutcher was not, by such voluntary usurpation, transformed from a contractor to an employee. What Redhead did of course Dutcher did not do, but neither did Dutcher do something else in place thereof. That is, Dutcher, whatever the activities of Redhead and of himself, occupied the same position during, and at the end of, the job that he occupied at its beginning. Dutcher got his pay for performing the job; if Redhead did all that Dutcher should have done, still Dutcher was entitled to payment of the contract price and he has received it. He never earned or received wages or salary on this job. When injured he was doing his own business, not that of the company.

It is helpful to recall that by occupation Dutcher was a contractor, not an employee or salaried man. He was at the time doing other jobs as a contractor and possessed the tools and machinery for doing contract work.

It seems to me under the authority of *Matter of Beach* v. *Velzy* (238 N. Y. 100, 103) claimant was an independent contractor. I, therefore, agree for reversal.

McCANN, HINMAN and WHITMYER, JJ., concur.

DAVIS, J. (dissenting). The question of whether one person engaged in work for another is the latter's servant or an independent contractor can be determined by a general definition only when there is no dispute in the facts. If the evidence on the subject is conflicting it is a mixed question of law and fact; and the relation is determined as an ultimate fact. This conclusion is reached by applying legal principles to related facts and the inferences reasonably drawn therefrom.

The tests are simple but their application is often difficult. (*Braxton* v. *Mendelson*, 233 N. Y. 122, 124.) The rule prevailing in this State and other jurisdictions is that the principal element in determining whether the relation of master and servant exists is the extent to which the one undertaking the work is under the control or direction of the person for whom the work is done. (*Baldwin* v. *Abraham*, 57 App. Div. 67; affd., 171 N. Y. 677; *Howard* v. *Ludwig*, Id. 507, 510; *Meredosia Levee & Dr. Dist.* v. *Industrial Comm.*, 285 Ill. 68; *Van Simaeys* v. *Cook Co.*, 201 Mich. 540; *State ex rel. Virginia & R. L. Co.* v. *District Court*, 128 Minn. 43; 150 N. W. 211; *Jones* v. *Penwyllt, etc., Co.*, 6 B. W. C. C. 492.) Often it is helpful to consider other circumstances, such as the fact that the workman furnishes his own help, tools or materials and is paid in a particular way. (*Braxton* v. *Mendelson, supra.*) But considered separately or together, these incidents are not

absolutely controlling for in the last analysis it is the right of the employer to control or direct the work of the other that furnishes the test. (*Baldwin* v. *Abraham, supra,* 73; *Wyllie* v. *Palmer,* 137 N. Y. 248, 257; *Smith* v. *State Workmen's Ins. Fund,* 262 Penn. St. 286; *Amalgamated Roofing Co.* v. *Travelers Ins. Co.,* 300 Ill. 487.)

Here the writing was indefinite and inconclusive. It referred to a previous conversation and was incomplete as to payment and the methods or details of doing the work. By their practical construction of its terms in the operations undertaken, it appears that the corporation not only furnished some men for the work but kept the time and paid the wages of all of them. The president required claimant to talk with him before hiring men, renting machinery or doing anything else; he sent out men with a foreman to assist; and was constantly on the job supervising and giving directions as to the details of the work. He gave directions to claimant to have the men work overtime. He discharged one man without consulting claimant; laid off teams, and even gave directions to claimant as to what he should personally do — in fact it is said that claimant was injured while following directions so given. From these facts a reasonable inference might be drawn that claimant was a superintendent paid a commission for his services.

These circumstances might properly be considered by the triers of the facts in reaching the conclusion as an ultimate fact that the claimant was a servant and not an independent contractor. (*Burke* v. *City & County Contract Co.,* 133 App. Div. 113; *Abromowitz* v. *Hudson View Contr. Co.,* 188 id. 356; affd., 228 N. Y. 509; *Matter of Fancher* v. *Boston Excelsior Co.,* 235 id. 272; *Matter of McNally* v. *Diamond Mills Paper Co.,* 223 id. 83, 85; *Decatur R. & L. Co.* v. *Industrial Board,* 276 Ill. 472; *Lewis* v. *Stanbridge,* 6 B. W. C. C. 568.) The extent of the control or supervision is one of the questions to be considered in determining the relation. (*Fischer* v. *Industrial Comm.,* 301 Ill. 621, 628.) All these things seem to have been brought to the attention of the Industrial Board when it found claimant was employed as a superintendent. The matter had been before them on a prior occasion when they had reversed the decision of the referee that claimant was an independent contractor. The present finding as to the status of the parties, with evidence to support it, is final and conclusive regardless of how we might have determined the question of fact on the same evidence. (Workmen's Comp. Law, § 20, as amd. by Laws of 1925, chap. 660; *Benjamin* v. *Rosenberg Bros.,* 180 App. Div. 234; affd., 223 N. Y. 569; *Matter of Dale* v. *Saunders Bros.,* 218 id. 59, 63.)

The award is for four weeks' loss of earnings. It appears that

First Department, March, 1927.                    [Vol. 219

claimant was on crutches for that period or longer. He was able to go in an automobile and exercise some supervision over work on another contract, but he had to employ other men to do his regular work. The evidence on the subject of his actual loss is somewhat indefinite, but as the award is only eighty dollars for loss of earnings because of a broken foot, I think the proof may be deemed sufficient to support it.

I vote for affirmance.

Award reversed and claim dismissed, with costs against the State Industrial Board.